Filed 6/24/26  P. v. Harmon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RICHARD LEE HARMON,<br>　　　Defendant and Appellant. | C102147<br><br>(Super. Ct. Nos. STK-CR-FE-2000-0014541, SP080822A) |

After a fire erupted in a boarded-up residence, firefighters found the body of A.W. (the victim) in one of the bedrooms.  She had been strangled before the fire started. Following two encounters with him on the night of the fire, police arrested defendant Richard Lee Harmon.  In 2003, a jury found Harmon guilty of second degree murder and other charges.  The trial court sentenced Harmon to an aggregate term of 54 years eight months to life.  This court affirmed the judgment.  (*People v. Harmon* (May 11, 2005, C044925) [nonpub. opn.] (*Harmon*).)[1]

This case returns to us following the denial of Harmon's resentencing petition pursuant to Penal Code section 1172.6.[2]  On appeal, Harmon contends the trial court

---

[1]　This court granted Harmon's motion to incorporate by reference the record in *Harmon, supra*, C044925.

[2]　Undesignated statutory references are to the Penal Code.

1

erred in denying his petition at the prima facie stage because the record of conviction does not conclusively foreclose resentencing relief. We disagree and affirm the order denying his petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying offense are described in our prior appellate opinion, which we summarize only to provide context. (*Harmon, supra*, C044925.)

Two days before the fire a witness saw Harmon and his girlfriend talking to the victim. That night police responded to a call that the victim was screaming. The victim told police officers she was afraid someone was following her. The police checked her residence, gaining entrance through a window. Although several windows were boarded up and the doors locked, at least two windows lacked panes and had no boards covering them. Officers urged the victim to go to a shelter, but she insisted on staying in the house.

Three days before the fire a witness observed Harmon and his girlfriend camping behind the witness's warehouse. The day of the fire Harmon told the witness some people had broken into the witness's vehicle and stolen guns, but the witness found nothing missing. Harmon insisted on showing the witness where the thieves had gone and pointed out the house that later burned. Harmon told the witness he should fire-bomb the house to get the thieves.

On the evening of March 27, 2000, police noticed smoke coming from the boarded-up house where the victim lived. Firefighters found the victim's body on the floor in a bedroom. There was an electrical cord wrapped around her wrists, tied behind her back. A forensic pathologist determined the victim had died of ligature strangulation before the fire started.

At around 3:30 a.m. the night of the fire, Harmon approached an officer guarding the crime scene and said he knew who killed the woman in the house. Harmon said he had gone to the house of an Asian girl earlier in the day where a group of Asian men

2

showed him a video of them tying up a woman with a lamp cord and a hanger.  The officer believed information about the lamp cord had not been publicly released.

The officer took Harmon to a police annex where detectives questioned him.  At one point during the interview, Harmon asked detectives to check on his girlfriend and told them where to find her.  Their campsite was 1,600 feet from the house where the victim's body was found.  Officers collected a black electrical cord at the campsite and the victim's checkbook, ATM card, and a census form from 2000.

Harmon was charged with murder (§ 187, subd. (a); count 1), first degree robbery (§ 211; count 2), and arson of an inhabited structure (§ 451, subd. (b); count 3).  The People alleged as a special circumstance that Harmon committed murder during a robbery (§ 190.2, subd. (a)(17)) and also alleged that he suffered a prior strike (§§ 667, subd. (d), 1170.12, subd. (b)), a prior serious felony conviction (§ 667, subd. (a)), and served two prior prison terms (§ 667.5, subd. (b)).

The court instructed the jury on four theories of murder:  (1) first degree premeditated murder (CALJIC No. 8.20); (2) first degree felony murder in the commission of a robbery (CALJIC No. 8.21); (3) second degree intentional murder (CALJIC No. 8.30); and (4) second degree implied malice murder (CALJIC No. 8.31).  Jurors were instructed they must determine the degree of murder (CALJIC 8.70), their determination of the degree of murder must be unanimous (CALJIC No. 8.74), and, when in doubt as to degree, to return a verdict of second degree murder (CALJIC No. 8.71).  The jury was also given an instruction on the requirement that each juror must decide the case individually (CALJIC No. 17.40).  As to the special circumstance, the trial court instructed jurors with a modified version of CALJIC No. 8.80.1 that if the jury found Harmon guilty of first degree murder, it must determine whether the murder was committed during a robbery.

The jury was not instructed on former second degree felony murder.  Former second degree felony murder was an unlawful killing that occurred in the commission of

a felony inherently dangerous to human life but not among the felonies enumerated in section 189 defining felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.) The only felonies Harmon was charged with were robbery and arson, which were (and still are) among the felonies enumerated in section 189. (*Chun*, at p. 1182; § 189, subd. (a).)

The jury initially found Harmon guilty of second degree murder and also found true the special circumstance that Harmon committed murder during a robbery. The trial court reinstructed the jury, highlighting instructions indicating that an acquittal on felony first degree murder and a true finding on the special circumstance were inconsistent. The jury resumed deliberations. The jury again found Harmon guilty of second degree murder but found the special circumstance not true. The trial court polled jurors to confirm their verdict of second degree murder and their finding of not true on the felony-murder special circumstance. The court sentenced Harmon to prison for 54 years to life plus eight months.

In 2023, Harmon filed a form petition to vacate his murder conviction and seek resentencing under section 1172.6. The trial court appointed counsel for Harmon and ordered the prosecutor to file a response. The prosecutor contended that Harmon was not entitled to relief under section 1172.6 because he was convicted of second degree murder as the actual killer, as shown by the record of conviction: (1) Harmon was alleged to be the sole perpetrator and actual killer; (2) the trial transcripts and summary of evidence adduced at trial established Harmon was the sole perpetrator and actual killer; (3) the jury was not instructed on the natural and probable consequences doctrine; and (4) the jury could not have relied on a felony-murder theory, because it was instructed on felony murder only as it applied to first degree murder and it found Harmon guilty of second degree murder.

In September 2024, the trial court conducted a hearing on Harmon's petition. Defense counsel stated he did not file a response to the People's brief because he had

nothing to challenge the People's allegations regarding the jury instructions. He explained the jury had reached a verdict of second degree murder. When the jury initially found the felony-murder special circumstance true, the trial court determined the verdict was inconsistent and instructed the jury that the special circumstance could not be found true if it found Harmon guilty of second degree murder. The special circumstance required a verdict of first degree murder. The jury then returned a verdict of second degree murder and found the special circumstance to be not true. The jury was not instructed on vicarious liability, aiding and abetting, or conspiracy. Defense counsel concluded, "I don't want to advocate against him. But, I don't know what I can say to make a prima facie showing for him that he should be considered for resentencing at an OSC hearing."

The trial court concluded Harmon failed to make a prima facie showing of eligibility for section 1172.6 relief, because he was convicted of second degree murder as the actual killer.

## DISCUSSION

In 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) "altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. (Stats. 2018, ch. 1015, § 3.) Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).) [¶] Second, Senate Bill 1437 imposed a new requirement that, except in cases of felony murder, 'a

5

principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449.) The amendment to section 188 that malice can no longer "be imputed to a person based solely on his or her participation in a crime" (§ 188, subd. (a)(3)), effectively eliminated the second degree felony-murder rule. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-249.)

Senate Bill 1437 also added a procedure, now codified in section 1172.6, subdivision (a), to permit individuals convicted of murder under prior law to ask the trial court to vacate their conviction and resentence them. As relevant here, the statute provides that a person convicted of felony murder may file a petition to have his or her conviction vacated when: (1) the charges filed against the person allowed the prosecution to proceed on a theory of felony murder; (2) the person was convicted of murder after trial or accepted a guilty plea in lieu of a trial at which he or she could have been convicted of murder; and (3) the person could not presently be convicted of murder because of changes to section 189 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)-(3).)

After the appointment of counsel and opportunity for briefing, the trial court may turn to consideration of the record of conviction to determine whether " 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If, instead, the petition shows a prima facie entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty under a still-valid theory of murder. (*Id.* at pp. 708-709; § 1172.6, subds. (c), (d)(1), (3).) If the prosecution fails to carry its burden, the challenged conviction and any accompanying allegations or enhancements must be

vacated and the petitioning defendant resentenced on any remaining charges.  (§ 1172.6, subd. (d)(3).)

A trial court's inquiry into whether a petitioner has stated a prima facie case for relief is "limited."  (*People v. Lewis, supra*, 11 Cal.5th at p. 971.)  "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record.  [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense."  (*People v. Curiel, supra*, 15 Cal.5th at p. 463; see also *People v. Patton* (2025) 17 Cal.5th 549, 565, fn. 8 [§ 1172.6 relief is not foreclosed "at the prima facie stage unless the at-issue jury findings 'conclusively establishe[d] every element of the offense' under a valid theory"].)  "[W]e may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [a defendant]'s petition."  (*Curiel*, at p. 465.) But courts must determine whether a petitioner has made out a prima facie case without engaging in " ' "factfinding involving the weighing of evidence or the exercise of discretion." ' "  (*Patton*, at p. 563.)

We review de novo a trial court's decision to deny a section 1172.6 petition at the prima facie stage.  (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200; *People v. Anaya* (2025) 117 Cal.App.5th 615, 620.)  We must determine whether Harmon makes a prima facie case that he "could not presently be convicted of murder … because of the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(3).)

Based on the record of conviction here, we conclude Harmon is not entitled to resentencing under section 1172.6 because his conviction was not based on a now-prohibited theory.  Although the jury was instructed on first degree felony murder, it acquitted Harmon of that charge.  The jury found Harmon guilty of second degree murder and found the special circumstance of murder committed during robbery not true.  Thus,

7

the changes Senate Bill 1437 made in section 189, subdivision (e) do not affect his conviction.

Harmon argues that the jury: (1) had been instructed with CALJIC No. 8.10 that he could be found guilty of murder under malice aforethought or felony-murder theories; (2) initially returned a verdict of second degree murder with a felony-murder special-circumstance finding, and after being reinstructed still returned an "internally inconsistent" verdict of second degree murder, first degree robbery, and arson; and (3) had no evidentiary basis to conclude that the murder occurred at some point other than during the robbery. Under these circumstances, Harmon maintains that by convicting him of second degree murder and first degree robbery, the jury implicitly made the requisite findings for first degree felony murder.

This argument requires us to ignore that the jury was instructed under CALJIC No. 8.74 to unanimously agree on the degree of murder and then returned a verdict of second degree murder. CALJIC Nos. 8.30 and 8.31 instructed jurors that Harmon could be found guilty of second degree murder only on express or implied malice theories. The trial court instructed the jury solely on first degree felony murder and did not give an instruction on second degree felony murder, a theory that would have been inapplicable as a matter of law. In reinstructing the jury, the trial court made clear that a felony-murder theory applied only to first degree murder, and the jury again returned a verdict of second degree murder and found the special circumstance to be not true. Finally, jurors were also instructed under CALJIC No. 17.40 to decide each issue for themselves. Combined with the unanimity instructions, CALJIC No. 17.40 required each juror to agree that Harmon was guilty of second degree murder on a malice aforethought theory. These instructions eliminated the possibility that jurors found Harmon guilty of second degree murder on a felony-murder theory.

Because the record of conviction conclusively establishes that the jury could not have relied on a felony-murder theory, changes to the felony-murder rule have no impact on Harmon's murder conviction.

Having determined that Harmon was not convicted under a now-invalid felony-murder theory, we need not address his argument that he could not have been convicted under the "actual killer" provision of the current felony-murder rule (§ 189, subd. (e)(1)).

We also reject Harmon's contention that defense counsel rendered ineffective assistance by conceding that Harmon could not make a prima facie case of eligibility under section 1172.6. Harmon makes this claim only if the People assert forfeiture due to this concession. While the People do not argue forfeiture, they nonetheless maintain Harmon cannot establish the requisite prejudice as a result of counsel's remarks because Harmon's claims on appeal lack merit. We agree that " '[i]t is not incumbent upon trial counsel to advance meritless arguments … merely to create a record impregnable to assault for claimed inadequacy of counsel.' " (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1038.)

## DISPOSITION

The order denying the petition for resentencing is affirmed.

/s/ _____
EARL, P. J.

We concur:

/s/ _____
RENNER, J.

/s/ _____
FEINBERG, J.